J-S57020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DERRICK PHILLIPS | |
| Appellant | No. 388 EDA 2017 |

Appeal from the Judgment of Sentence dated November 10, 2016
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0002489-2016

BEFORE: PANELLA, J., SOLANO, J., and MUSMANNO, J.

MEMORANDUM BY SOLANO, J.:                    **FILED NOVEMBER 17, 2017**

Appellant Derrick Phillips appeals from the judgment of sentence imposed after he was convicted of possession with intent to deliver a controlled substance, possession of a controlled substance, and possession of drug paraphernalia.[1]  We affirm.

On April 5, 2016, at approximately 6:00 a.m., police executed a search warrant at the home of Tiesha Spriggs in Chester.  The warrant was based on Spriggs' sales of methamphetamines to confidential informants. While executing the warrant, police found Appellant in a closet in a bedroom on the first floor of Spriggs' house.  Appellant asked what was going on, and after being informed that the police were investigating sales of methamphetamines, Appellant stated that he had only a small amount of cocaine.  The closet where Appellant was found contained men's clothing,

_____

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32).

including a jacket with sixteen bags of cocaine inside weighing a total of 7.89 grams – nine small blue baggies of cocaine inside a sandwich bag and seven larger clear baggies of cocaine. In the first floor bedroom area, police also found Appellant's wallet, containing his driver's license (which listed a different address from Spriggs'), and two cell phones. In Spriggs' upstairs bedroom, police found Apple brand bagging material identical to the bags found in the jacket, several razor blades, and a grinder. In the kitchen, police found a bag of cocaine weighing 11.35 grams.

After the search, Appellant was charged with possession with intent to deliver a controlled substance, possession of a controlled substance, possession of drug paraphernalia, and conspiracy to possess with intent to deliver a controlled substance.[2]

Jury selection in Appellant's case took place on September 13, 2016. During voir dire, Juror 10, who was African American, said she had younger brothers and sisters who had been homeless and had been arrested. Juror 10 said she did not know if her siblings had drug-related problems, and added, "But I've heard." She said she would be sympathetic to someone "down on their luck," but not to a defendant merely because he was a defendant. N.T., 9/13/16, at 55-57. Juror 16, who was also African American, said her first cousin was accused of drug-related crimes three times, but said that her cousin's experiences would not affect her ability to

---

[2] Spriggs was charged with the same offenses but was not tried with Appellant.

be a fair and impartial juror.  *Id.* at 64.

The Commonwealth used its peremptory challenges to strike, among others, Jurors 10 and 16.  Appellant claimed that the prosecutor had used his peremptory challenges in a racially discriminatory manner in violation of **Batson v. Kentucky**, 476 U.S. 79 (1986).  Appellant, who is African American, asserted that the prosecutor had used his peremptory strikes to eliminate the only two African American jurors remaining after one African American venireperson was excused by agreement for a hardship.[3]  The prosecutor argued that he struck Juror 10 because she indicated that her brothers and sisters had drug problems and struck Juror 16 because her cousin had been charged with drug crimes.  The prosecutor explained, "Anytime someone has family members closely related that have been affected by narcotics and the nature, and the alleged charges in the present case are drug-related, I think it bears a fair inference that the person could potentially be affected or biased one way or another, Your Honor.  And for those reasons, those jurors were stricken, Judge."  N.T., 9/13/16, at 104.  The prosecutor also noted that he struck Caucasian jurors who had relatives who had been charged with crimes.  *Id.* at 107-08.  The trial court denied Appellant's **Batson** challenge.  The trial court did not explain its rationale at that time, but in the opinion it issued after Appellant filed this appeal, the trial court explained that it found Appellant established a *prima facie* case of

---

[3] Jury selection was completed before two other African American venirepersons were reached.

discrimination, the Commonwealth offered a race neutral explanation, and Appellant failed to carry his burden of proving purposeful discrimination. Trial Ct. Op., 5/15/17, at 11-16.

Appellant was tried by the jury on September 14, 2016. At the trial, Detective Steven Bannar and Officer James Nolan, who participated in the execution of the search warrant on April 5, 2016, testified. Detective Bannar and Officer Nolan averred that that they found Appellant in the ground floor bedroom closet and that Appellant said he had a small amount of cocaine. Detective Bannar also testified about the drugs and paraphernalia found in the jacket and in other parts of Spriggs' house. Detective Michael Honicker, an expert in drugs and drug investigations, opined that packaging of the drugs found in the jacket led him to conclude that the cocaine was for distribution, not for personal use. Appellant testified that the bedroom in which he was found was Spriggs' son's room, the jacket in the closet was not his, he did not tell the police he had cocaine, and he did not have any cocaine.

The jury found Appellant guilty of all four crimes with which he was charged. With regard to the charge of possession with intent to deliver, the jury found Appellant possessed the 7.89 grams of cocaine found in the jacket, but not the 11.35 grams found in the kitchen. On November 10, 2016, the trial court imposed the following concurrent sentences: 24 to 60 months' incarceration, followed by five years' probation for possession with intent to deliver a controlled substance; 24 to 60 months' incarceration for

conspiracy; and one year of probation for possession of drug paraphernalia.[4]

On November 18, 2016, Appellant filed a post-sentence motion in which he argued that the evidence was insufficient to prove that he committed any of the crimes of which he was convicted. On December 13, 2016, the trial court granted Appellant's post-sentence motion with regard to the conspiracy charge and denied it with regard to the other charges.

On January 9, 2016, Appellant's trial counsel filed a timely notice of appeal and a petition to withdraw. After the trial court granted the petition to withdraw, Appellant's new counsel filed another notice of appeal on January 11, 2016 (254 EDA 2017). This Court dismissed the latter appeal as duplicative of the former.

Appellant raises the following issues, as stated in his brief:

1) Whether the judgment of sentence should be vacated and Appellant, an African American, granted a new trial since the Commonwealth violated **Batson v. Kentucky** by using peremptory challenges to exclude two potential jurors (numbers ten and sixteen) based upon their race, especially where these strikes eliminated the only two remaining African American panelists available to serve on the jury, and the purported race-neutral reasons for striking them were pretextual and unsupported by the record?

2) Whether the evidence is insufficient to sustain the convictions for possession of a controlled substance with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia since the Commonwealth failed to prove, beyond a reasonable doubt, that Appellant actually or constructively possessed the alleged cocaine and paraphernalia at issue herein?

Appellant's Brief at 5.

---

[4] The charge of possession of a controlled substance merged with the crime of possession with intent to deliver for purposes of sentencing.

## Sufficiency of the Evidence

We initially address Appellant's second claim, challenging the sufficiency of the evidence, because a successful sufficiency challenge would result in discharge, rather than a retrial. *See Commonwealth v. Toritto*, 67 A.3d 29, 33 (Pa. Super.) (*en banc*), *appeal denied*, 80 A.3d 777 (Pa. 2013).

> We apply the following well-established standard of review:
>
> A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super.) (citation omitted), *appeal denied*, No. 118 EAL 2017, 2017 WL 3600378 (Pa., Aug. 22, 2017).

Appellant challenges only the element of possession, which is common to all three charges of which he was convicted.[5] Possession may be actual

---

[5] Appellant was found to have violated the following provisions of Section 13(a) of the Controlled Substance, Drug, Device and Cosmetic Act:

> The following acts and the causing thereof within the Commonwealth are hereby prohibited: . . .
>
> (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or

*(Footnote Continued Next Page)*

or constructive.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant.

***Commonwealth v. Roberts***, 133 A.3d 759, 767–68 (Pa. Super.) (citations omitted, some quotation marks omitted, and some formatting altered), ***appeal denied***, 145 A.3d 725 (Pa. 2016).

*(Footnote Continued)* ─────────────────

> pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act. . . .
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance. . . .
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this act. . . .

35 P.S. § 780-113(a). It is undisputed that cocaine is a controlled substance under the statute.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Kevin F. Kelly, we conclude that there was sufficient evidence presented to establish beyond a reasonable doubt that Appellant constructively possessed the cocaine and paraphernalia (baggies) found in the jacket. **See** Trial Ct. Op. at 20-26 (finding that the evidence, when viewed in a light most favorable to the Commonwealth, was sufficient to prove Appellant's constructive possession, based on Detective Bannar's and Officer Nolan's testimony that Appellant was hiding in a bedroom closet when they executed the search warrant; Appellant was the only person in that bedroom; Appellant told the officers he had a small amount of cocaine; and police found cocaine and baggies in a jacket in the closet where Appellant had been hiding).

**Batson Challenge**

Appellant claims the trial court erred in rejecting his **Batson** challenge to the prosecutor's use of peremptory strikes to exclude two African American potential jurors.

The trial court rejected Appellant's **Batson** claim after concluding that, although Appellant established a *prima facie* case of discrimination, the Commonwealth offered a race-neutral explanation for its strikes and Appellant failed to carry his burden of proving purposeful discrimination. Trial Ct. Op. at 11-16.

The Supreme Court of Pennsylvania has explained:

*In Batson*, [476 U.S.] at 89, . . . the United States Supreme Court held that the federal Constitution's Equal Protection Clause prohibits a prosecutor from challenging potential jurors solely on the basis of race. In *J.E.B.* [*v. Alabama*, 511 U.S. 127, 129, 146 (1994)], the High Court extended *Batson's* holding to encompass challenges on the basis of gender. As we have previously explained, the framework for analyzing a *Batson* claim involves the following three steps.

> First, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the prima facie showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination. *Batson*, 476 U.S. at 97 . . . .

> The second prong of the *Batson* test, involving the prosecution's obligation to come forward with a race-neutral explanation of the challenges once a prima facie case is proven, "does not demand an explanation that is persuasive or even plausible." Rather, the issue at that stage "is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reasons offered will be deemed race neutral."

> If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test, *i.e.*, the ultimate determination of whether the opponent of the strike has carried his burden of proving purposeful discrimination. It is at this stage that the **persuasiveness** of the facially neutral explanation proffered by the Commonwealth is relevant.

As we have recently reaffirmed, "a trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous." Such great deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make

credibility determinations. Although the demeanor of the attorney exercising the peremptory challenge is often the best evidence as to the question of discriminatory intent, the trial court should consider the totality of the circumstances before making its ruling. Other relevant evidence as to the ultimate question of whether the prosecutor exercised purposeful discrimination and acted with discriminatory intent includes the following: the final composition of the jury, the race or gender sensitivity of the case, and any questionable remarks made by the prosecutor during jury selection.

*Commonwealth v. Roney*, 79 A.3d 595, 618–19 (Pa. 2013) (emphasis in original) (most citations omitted).

After a careful review of the record, for the reasons expressed in the opinion of the Honorable Kevin F. Kelly, we conclude that the trial court's decision was not clearly erroneous. *See* Trial Ct. Op. at 14-16 (finding prosecutor's race-neutral explanations for peremptory strikes were credible; prosecutor did not make any statements or pose any questions "even suggesting, let alone showing an invidious discriminatory motive"; prosecutor's demeanor did not suggest an inappropriate intent; and Appellant's case did not involve a victim of a different race than Appellant).

Appellant argues that two white jurors (numbers 24 and 33) also "knew people who had contact with the criminal justice system," and the prosecutor's failure to strike those jurors constitutes evidence that his reasons for striking the African American jurors were pretextual. Appellant's Brief at 19-21. Appellant did not make this argument in the trial court or in his Appellate Rule 1925(b) statement of matters complained of on appeal, and thus the trial court did not have the opportunity to address it. Even if

the argument had been preserved, we would conclude that knowing someone who had contact with the criminal justice system is distinguishable from having a relative with a drug problem. We are therefore unpersuaded by Appellant's argument.

The parties are instructed to attach a copy of the trial court's opinion of May 15, 2017, to all future filings that reference this Court's decision.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/17/2017

**IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA**
**CRIMINAL**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. 2489-16 |
| | : | |
| v. | : | |
| | : | |
| DERRICK PHILLIPS | : | Superior Court No. 388 EDA 2017 |

A. Sheldon Kovach, Esquire - Deputy District Attorney for the Commonwealth
Patrick J. Connors, Esquire – Attorney for Derrick Phillips

## OPINION

Kelly, J.                                                Date: May 15, 2017

A criminal complaint was filed on April 5, 2016, by Detective Steven Bannar, Delaware County Criminal Investigation Division, charging Derrick Phillips (hereinafter referred to as "Defendant" or "Phillips") with, *inter alia*, possession with intent to deliver a controlled substance,[1] criminal conspiracy to commit possession with intent to deliver,[2] and related offenses.

On April 21, 2016, a preliminary hearing took place before the magisterial district court and after the Commonwealth's presentation of evidence, the magisterial district judge held Defendant Phillips for trial court proceedings as to all prosecuted offenses. N.T. 4/21/16.

The Defendant was formally arraigned on May 18, 2016, at which time the Office of the District Attorney of Delaware County lodged against him a criminal information averring the following: Count 1 - Possession With Intent to Deliver a Controlled Substance;[3] Count 2 –

---

[1] 35 Pa.C.S. §780-113(a)(30).
[2] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)).
[3] 35 Pa.C.S. §780-113(a)(30).

Possession of a Controlled Substance;[4] Count 3 - Possession of Drug Paraphernalia;[5] and Count 4 - Criminal Conspiracy to commit Possession With Intent to Deliver a Controlled Substance.[6]

On June 14, 2016, Defendant Phillips lodged a counseled, Omnibus Pretrial Motion for Relief. This omnibus filing included a Motion for Discovery and a Motion for Suppression of Evidence. *See* Omnibus Pretrial Motion dated June 14, 2016.

This court scheduled a hearing relevant to the Defendant's pretrial motion for June 27, 2016. *See* Hearing Notice dated June 14, 2016. On June 29, 2016, this past scheduled listing took place. N.T. 6/29/16. At the conclusion of this hearing, the Commonwealth's attorney and the defense lawyer came to an agreement material to the Defendant's exclusionary challenge.[7] N.T. 6/29/16, p. 32.

Defendant Phillips lodged a counseled Motion for Separate Trials of Defendant on September 7, 2016. *See* Motion for Separate Trials of Defendant dated September 7, 2016. This court set such a proceeding for September 12, 2016, material to this motion. *See* Notice of Hearing dated September 7, 2016. On that date (September 12, 2016), the court ruled that the Defendant's motion seeking separate trials was moot.[8] N.T. 9/12/16, p. 5. *See also* Order dated September 14, 2016.

---

[4] 35 Pa.C.S. §780-113(a)(16).
[5] 35 Pa.C.S. §780-113(a)(32).
[6] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)).

[7] At this hearing, defense counsel advised the majority of the claims past advanced via his discovery motion had become moot, while the remaining would be resolved during the exclusionary hearing. N.T. 6/29/16, pp. 8-10.

[8] A joint trial of the above-captioned matter, as well as the co-defendant's companion prosecution, *Commonwealth v. Spriggs*, No. 2488-16, was scheduled to commence the week beginning September 12, 2016, before this court.

Recognizing that co-Defendant Spriggs several days prior had just been arrested in an unrelated matter and the possibility that it may have been in her best interests to subsequently negotiate with the Commonwealth a combined resolution of this newer prosecution and the case presently pending before this court (No. 2488-16), the matter of *Commonwealth v. Spriggs*, No. 2488-16 previously joined with the above-captioned case was continued, without objection, at the request of defense counsel, until October 18, 2016, with the defense's *in limine* motion carried until that future trial date (October 18, 2016).

2

A jury trial commenced on September 13, 2016, and concluded the following day (September 14, 2016). N.T. 9/13/16. N.T. 9/14/16. The jury found the Defendant guilty as to the following: Count 1 - Possession With Intent to Deliver a Controlled Substance;[9] Count 2 - Possession of a Controlled Substance;[10] Count 3 - Possession of Drug Paraphernalia;[11] and Count 4 - Criminal Conspiracy to commit Possession With Intent to Deliver a Controlled Substance.[12] N.T. 9/14/16, pp. 291-95. *See also* Jury Verdict. Immediately subsequent to the jury's verdict, defense counsel orally proffered a Motion for Judgment of Acquittal material to Count 4 – Criminal Conspiracy to commit Possession With Intent to Deliver a Controlled Substance.[13] The court heard argument relevant to this motion and denied the same. N.T. 9/14/16, pp. 296-98. This court as sentencing aids ordered a presentence investigation and directed Defendant Philips to undergo a substance abuse evaluation. N.T. 9/14/16, p. 299. *See also* Pa.R.Crim.P. 702. The court scheduled sentencing for November 10, 2016. N.T. 9/14/16, p. 299.

A sentencing hearing took place before this court on November 10, 2016.[14] N.T. 11/10/16. This court then sentenced Defendant Phillips to the following: Count 1 (Possession With Intent to Deliver a Controlled Substance)[15] – A term of twenty-four (24) through sixty (60)

---

Appreciating that the above-named Defendant since the instant matter's commencement and through that time had been incarcerated, as well as relatedly that defense counsel was ready to so proceed, the court then called the above-captioned case for trial, despite any such past Commonwealth joinder notification.

The court further memorialized its ruling denying the Defendant's severance motion as moot per an order dated September 14, 2016. *See also* Order dated September 14, 2016.

[9] 35 Pa.C.S. §780-113(a)(30).
[10] 35 Pa.C.S. §780-113(a)(16).
[11] 35 Pa.C.S. §780-113(a)(32).
[12] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)).
[13] *Id.*

[14] For sentencing purposes and with counsel's agreement, Count 2 – Possession of a Controlled Substance, 35 Pa.C.S. §780-113(a)(16), was merged into Count 1 – Possession With Intent to Deliver a Controlled Substance, 35 Pa.C.S. §780-113(a)(30). N.T. 11/10/16, pp. 3-4.

[15] 35 Pa.C.S. §780-113(a)(30).

3

months incarceration at a state correctional facility followed by a period of five (5) years state probationary oversight to run consecutive to his parole; Count 4 (Criminal Conspiracy to commit Possession With Intent to Deliver a Controlled Substance)[16] – A term of twenty-four (24) through sixty (60) months imprisonment at a state penal institution to run concurrently to Count 1 (possession with intent to deliver a controlled substance);[17] and Count 3 (Possession of Drug Paraphernalia)[18] – A one (1) year period of state probationary oversight to run concurrent to both Count 1 (possession with intent to deliver a controlled substance)[19] and Count 4 (criminal conspiracy to commit possession with intent to deliver a controlled substance).[20] The Defendant was afforded the applicable time served credit and deemed ineligible for risk recidivism reduction incentive consideration,[21] absent objection. N.T. 11/10/16, pp. 25-27. *See also* Certificate of Imposition of Judgment of Sentence.

The Defendant on November 18, 2016, lodged a counseled, Post-Sentence Motion. *See* Defendant's Post-Sentence Motion dated November 18, 2016. On December 8, 2016, a listing relevant to this motion was scheduled. *See* Hearing Notice dated November 22, 2016. The post-sentence motion hearing as then set commenced and concluded on December 8, 2016.

On December 13, 2016, this court entered an order denying and granting in part the defense's post-sentence motion. *See* Order dated December 13, 2016. The court denied the Defendant's motion relevant to his convictions of Count 1 - Possession With Intent to Deliver a Controlled Substance,[22] as well as Count 3 – Possession of Drug Paraphernalia,[23] while granting the Defendant's judgment of acquittal application regarding Count 4 – Criminal Conspiracy to

---

[16] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)).
[17] 35 Pa.C.S. §780-113(a)(30).
[18] 35 Pa.C.S. §780-113(a)(32).
[19] 35 Pa.C.S. §780-113(a)(30).
[20] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)).
[21] 61 Pa.C.S. §§4501 *et seq.*
[22] 35 Pa.C.S. §780-113(a)(30). *See also* Criminal Information Count 1.
[23] 35 Pa.C.S. §780-113(a)(32). *See also* Criminal Information Count 3.

4

commit Possession With Intent to Deliver a Controlled Substance and vacated his sentence as to that offense.[24] *See* Order dated December 13, 2016.[25]

The Defendant's trial attorney contemporaneously lodged on January 9, 2017, a Notice of Appeal, as well as a Motion to Withdraw as Counsel. *See* Notice of Appeal dated January 9, 2017, and Motion to Withdraw as Counsel dated January 9, 2017. *See also* Superior Court No. 254 EDA 2017.

This court on that same date (January 9, 2017) forwarded correspondence to Patrick J. Connors, Esquire of the Delaware County Public Defender's Office requesting he determine if Defendant Phillips was eligible for that office's stewardship. *See* Correspondence dated January 9, 2017.

On January 11, 2017, the Defendant lodged a second Notice of Appeal via Attorney Connors. *See* Notice of Appeal dated January 11, 2017. *See also* Superior Court No. 388 EDA 2017.[26]

---

[24] 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)). *See also* Criminal Information Count 4.

[25] With the setting aside of the Defendant's criminal conspiracy to commit possession with intent to deliver a controlled substance conviction (Count 4) and its resultant sentence, the Defendant's aggregate sentence at bar remained two (2) through five (5) years incarceration to be served at a state correctional institution followed by five (5) years consecutive, state probationary oversight. *See* Certificate of Imposition of Judgment of Sentence.

Recognizing the Defendant's now vacated sentence per Count 4 – Criminal Conspiracy to commit Possession with Intent to Deliver a Controlled Substance, 18 Pa.C.S. §903(35 Pa.C.S. §780-113(a)(30)), was an identical incarceration term and imposed wholly concurrent to that of Count 1 (Possession with Intent to Deliver a Controlled Substance, 35 Pa.C.S. §780-113(a)(30)), this court's intended sentencing scheme yet stayed wholly intact and resentencing was not needed. *Commonwealth v. Serrano*, 61 A.3d 279, 287-88 (Pa.Super. 2013)(Remanded for resentencing as vacated judgment may have upset sentencing scheme.); *Commonwealth v. Carter*, 122 A.3d 388, 393 (2015)(Vacated and remanded when entire sentencing scheme was affected.); and *Commonwealth v. Ferguson*, 107 A.3d 206, 213-14, 216 (2015)(Vacating entire sentence pursuant to *Alleyne* and remanding for resentencing on all counts, where the sentence encompassed both counts subject to mandatory minimum sentencing provisions and counts not subject to mandatory minimum sentencing provisions.) *See also* Certificate of Imposition of Judgment of Sentence.

[26] With the filing of this second appeal notice, the Superior Court dismissed *sua sponte* the first appeal under Superior Court No. 254 EDA 2017, as duplicative of the matter in Superior Court No. 388 EDA 2017. *See* Superior Court No. 254 EDA 2017, Order dated February 14, 2017.

5

By an order of February 2, 2017, this court instructed Defendant Phillips' lawyer to lodge a concise statement of matters complained of on appeal. *See* Order dated February 2, 2017. *See also* Pa.R.A.P. 1925(b). This court per a separate order of this same date (February 2, 2017) permitted the trial lawyer (John H. Pavloff, Esquire) to withdraw as the Defendant's counsel. *See* Order dated February 2, 2017.

Defendant Phillips via Attorney Connors on February 21, 2017, filed the below appellate complaints statements. *See* Statement of Matters Complained.

### *I. The judgment of sentence should be vacated and Mr. Phillips, an African American, should be granted a new trial since the Commonwealth violated Batson v. Kentucky by using peremptory challenges to exclude two potential jurors (numbers ten and sixteen) based upon their race, especially where these strikes eliminated the only two remaining African American panelists available to serve on the jury, and the purported race-neutral reasons for striking them were pretextual and unsupported by the record.*

By this first appellate complaint, the Defendant Phillips advances that the Commonwealth's use of two (2) peremptory challenges to exclude two (2) potential, African-American jurors were not based on racially neutral justifications and thus in violation of the United States Supreme Court decision, *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712 (1986), and its Pennsylvania appellate court progeny. As the record at bar demonstrates, the assistant district attorney's exercise of such peremptory challenges was not racially motivated, but were each supported by race-neutral reasons. Resultantly, this error assignment is without merit.

In *Batson*, the Supreme Court of the United States recognized that " ... the Equal Protection Clause forbids [a] prosecutor to claim potential jurors solely on account of their race ... ." *Id.* 476 U.S. at 89, 106 S.Ct. at 1719. Subsequent caselaw has established and refined the controlling analysis of a *Batson* claim. The Pennsylvania Supreme Court in *Commonwealth v. Cook*, detailed a defendant's initial burden in advancing such an attack as follows:

6

> [F]irst, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; ...

> To establish a *prima facie* case of purposeful discrimination ... the defendant [must] show that he [i]s a member of a cognizable racial group, that the prosecutor exercised a peremptory challenge or challenges to remove from the venire members of the defendant's race; and that other relevant circumstances combine [ ] to raise an inference that the prosecutor removed the juror(s) for racial reasons. *Batson*, 476 U.S. at 96, 106 S.Ct. 1712. ... .

*Commonwealth v. Cook*, 597 Pa. 572, 586, 952 A.2d 594, 602 (2008) *quoting Commonwealth v. Harris*, 572 Pa. 489, 506-07, 817 A.2d 1033, 1042-43 (2002) *citing Batson v. Kentucky supra* 476 U.S. at 93-97, 106 S.Ct. at 1712-23. *See also Commonwealth v. Williams*, 602 Pa. 360, 393, 980 A.2d 510, 530 (2009).

"[T]he necessary inference may derive from a pattern of strikes against minority jurors or from the manner of the prosecution's questions and statements during *voir dire* examination." *Commonwealth v. Uderra*, 580 Pa. 492, 509, 862 A.2d 74, 84 (2004) *citing Batson v. Kentucky supra* 476 U.S. at 97, 106 S.Ct. at 1723.

Under *Batson*, once the objecting party makes out a *prima facie* case of discrimination, the burden shifts to the striking party to provide for the challenged, prospective juror a race-neutral explanation. *Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602 *quoting Commonwealth v. Harris supra* 572 Pa. at 506-07, 817 A.2d at 1042-43 *citing Batson v. Kentucky supra* 476 U.S. at 93-97, 106 S.Ct. at 1712-23; *Commonwealth v. Watkins*, 630 Pa. 652, 680, 108 A.3d 692, 708 (2014) *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602; and *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602-03. The race-neutral explanation " ' ... does not demand an explanation that is persuasive, or even plausible.' " *Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602 *quoting Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771 (1995). Rather, the issue at that stage " ' ... is the facial validity of the

7

prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* 597 Pa. at 586, 952 A.2d at 602 *quoting Purkett v. Elem supra* 514 U.S. at 767-768, 115 S.Ct. at 1771 *quoting Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 1866 (1991). The Commonwealth's race-neutral rationale must be " ' … clear and reasonably specific, as well as related to the particular case to be tried.' " *Commonwealth v. Cook supra* 597 Pa. at 593, 952 A.2d at 606 *quoting Batson v. Kentucky supra* 476 U.S. at 98, 106 S.Ct. at 1724. Explanations considered race-neutral include " … characteristics that relate to a prospective juror's ability to serve (*i.e.,* the inability to understand the law, prior exposure to the criminal justice system; reluctance to impose the death penalty; the inability to respond appropriately to questions asked; and youth, indicating a possible inability to comprehend the seriousness of the penalty sought.)." *Commonwealth v. Williams supra* 602 Pa. at 396, 980 A.2d at 531-32 *citing Commonwealth v. Cook supra* 597 Pa. at 592-593, 952 A.2d at 606.

In determining whether the prosecution has satisfied its burden of producing a race-neutral explanation for a questioned peremptory strike, it is important to be mindful that " ' … the ultimate burden of **persuasion** regarding racial motivation rests with, and never shifts from, the opponent of the strike.' " *Commonwealth v. Cook supra* 597 Pa. at 593-94, 952 A.2d at 607 (Emphasis in original.) *quoting Rice v. Collins,* 546 U.S. 333, 338, 126 S.Ct. 969, 974 (2006). "[W]hile a defendant can prove a *Batson* violation by showing that even one black juror was struck for a racial reason, … a prosecutor's failure to explain every peremptory challenge of black jurors is not necessarily fatal to the prosecutor's burden of production." *Id.* 597 Pa. at 594, 952 A.2d at 607 *citing Harrison v. Ryan,* 909 F.2d 84, 88 (3d Cir.1990); *United States v. Battle,* 836 F.2d 1084, 1086 (8th Cir.1987); *United States v. David,* 803 F.2d 1567, 1571 (11th

8

Cir.1986); *Yee v. Duncan,* 463 F.3d 893, 900 (9th Cir.2006), *cert. denied,* 552 U.S. 1043, 128 S.Ct. 653, 169 L.Ed.2d 517 (2007); *Bui v. Haley,* 321 F.3d 1304, 1317 (11th Cir. 2003); and *United States v. Forbes,* 816 F.2d 1006, 1011 Fn. 7 (5th Cir.1987). "Circumstantial evidence, in addition to the prosecutor's explanation, may be probative in the ultimate determination of whether peremptory challenges were made for racial reasons." *Id.* 597 Pa. at 594, 952 A.2d at 607.

Salient to current considerations, the Pennsylvania Supreme Court in *Commonwealth v. Harris* previously opined that below:

> In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'

*Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1043 *quoting Hernandez v. New York supra* 500 U.S. at 365, 111 S.Ct. at 1869.

" 'If a race-neutral explanation is tendered, the trial court must then proceed to the third prong of the test, *i.e.,* the ultimate determination of whether the opponent of the strike has carried his burden of proving purposeful discrimination.' " *Commonwealth v. Cook supra* 597 Pa. at 586-87, 952 at 602-03 *quoting Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43 *citing Purkett v. Elem supra* 514 U.S. at 768, 115 S.Ct. at 1771; *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602-03 *quoting Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43; and *Commonwealth v. Watkins supra* 630 Pa. at 680, 108 A.3d at 708 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602. "It is at this stage that the persuasiveness of the facially-

9

neutral explanation proffered by the Commonwealth is relevant." *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook supra* 597 Pa, at 586-87, 952 A.2d at 602-03 *quoting Commonwealth v. Harris supra* 572 Pa. at 489, 817 A.2d at 1042-43. The totality of the circumstances is reviewed in deciding whether a defendant sufficiently established purposeful discrimination. *Commonwealth v. Williams supra* 602 Pa. at 396, 980 A.2d at 531-532.

" '[T]he trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal' and will not be overturned unless clearly erroneous.' ... 'Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility determinations.' " *Commonwealth v. Cook supra* 597 Pa. at 587, 952 A.2d at 603 *quoting Miller–El v. Cockrell,* 537 U.S. 322, 340, 123 S.Ct. 1029, 1041 (2003) *quoting Hernandez v. New York supra* 500 U.S. at 364, 111 S.Ct. at 1866. *See also Commonwealth v. Sneed,* 587 Pa. 318, 899 A.2d 1067, 1076 (2006)("*Batson* contemplated a central role for the trial judge ... in assessing the credibility of the neutral reasons for peremptory strikes proffered by the lawyer who exercised them."), *abrogated on other grounds by Commonwealth v. Jones,* 597 Pa. 286, 951 A.2d 294 (2008); *Commonwealth v. Williams supra* 602 Pa. at 395, 980 A.2d at 531 *quoting Commonwealth v. Cook supra* 597 Pa. at 587, 952 A.2d at 603 *quoting Miller–El v. Cockrell supra* 537 U.S. at 340, 123 S.Ct. at 1041; *Commonwealth v. Smith,* 866 A.2d 1138, 1140 (Pa.Super. 2005)("With regard to appellate review of *Batson* claims, we recognize that the trial court is in the best position to observe the proceedings and so is called upon to make a credibility determination with regard to counsel's proffered reasons for a strike. ... The trial court's determination may be overturned on appeal only if it is 'clearly erroneous.' ") *citing*

10

*Commonwealth v. Doyen*, 848 A.2d 1007, 1013 (Pa.Super. 2004), *appeal denied*, 579 Pa. 700, 857 A.2d 677 (2004).

Immediately following the seating of the jury, but prior to it being sworn, defense counsel at side bar brought to the attention of the court the following:

> Your, Honor, the Batson challenge to make [*sic*]. I think the record will be clear that out of the entire panel there were only five I will refer to as dark-skinned jurors, African American perhaps, but certainly with dark skin. One of the women may have been Hispanic. Two of them were not even reached, #48 and 49. 28 was excused for a hardship. The only two remaining African American jurors were stricken by the Commonwealth. That leaves none. I make a challenge to that decision.

N.T. 9/13/16, p. 103.

At this point a *prima facie* showing having been established by Defendant Phillips giving rise to an inference that the prosecutor struck one (1) or more prospective jurors on account of race, *Commonwealth v. Cook supra* 597 Pa. at 585, 952 A.2d at 602, the court turned to the Commonwealth, the striking party, to provide for the exercising of these challenges a race-neutral explanation, if any. N.T. 9/13/16, pp. 103-04. *See also Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602 *quoting Commonwealth v. Harris supra* 572 Pa. at 506-07, 817 A.2d at 1042-43 *citing Batson v. Kentucky supra* 476 U.S. at 93-97, 106 S.Ct. at 1712-23; and *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530.

The assistant district attorney as to panelist No. 10 offered that she had related her siblings suffered from drug addictions and that they were "on the streets." N.T. 9/13/16, p. 104. The prosecutor further advanced "[q]uite frankly, Judge, I don't know what or now [*sic*] that fact impacts the potential juror's decision-making process in this case. Therefore I did not want her to be on our jury panel." N.T. 9/13/16, p. 104. Regarding potential juror No. 16, the Commonwealth's attorney proffered that " ... her first cousin had been charged with and

11

convicted of drug charges and again, Judge, I think that's – that can't be minimized." N.T. 9/13/16, p. 104. The prosecutor concluded his explanation by stating, "[a]nytime someone has family members closely related that have been affected by narcotics and the nature, and the alleged charges in the present case are drug-related, I think it bears a fair inference that the person could potentially be affected or biased one way or another, Your Honor. And for those reasons, those jurors were stricken, Judge." N.T. 9/13/16, p. 104.

Defense counsel summarily contended that the prosecution's reasons for excluding the two (2) potential jurors were in fact not race-neutral and that he did not find the Commonwealth's justifications to be persuasive. N.T. 9/13/16, p. 107.

In response to this generalized argument, the Commonwealth's attorney presented his other strikes as follows:

> Judge, I struck #14 because he indicated – a Caucasian individual because him and his brother have been charged with DUIs. ... I struck #21 because her husband had Aggravated Assault charges. I struck #26 because her friend was charged with a crime. ... The ethnicity of 26 was also Caucasian.

N.T. 9/13/16, pp. 107-08.

A race-neutral explanation clearly being tendered by the prosecution as to both panelist Nos. 10 and 16, the trial court then proceeded to the third prong of the *Batson* challenge analysis " ' ... the ultimate determination of whether the opponent of the strike has carried his burden of proving purposeful discrimination.' " *Commonwealth v. Cook supra* 597 Pa. at 586-86, 952 at 602-03 *quoting Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43 *citing Purkett v. Elem supra* 514 U.S. at 768, 115 S.Ct. at 1771; *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook* 597 Pa. at 586, 952 A.2d at 602-03 *citing Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43; and *Commonwealth*

12

*v. Watkins supra* 630 Pa. at 680, 108 A.3d at 708 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602. The court having concluded that the Commonwealth had advanced sufficient race-neutral reasons as it related to panelists 10 and 16 as well as that those explanations appeared reasonable and credible in light of the salient record and Defendant Phillips thus having failed to carry his burden of proving purposeful discrimination, his *"Batson"* claim was refused. N.T. 9/13/16, p. 108.

In light of the totality of the material circumstances, the court's decision on the ultimate question of discriminatory intent was not "clearly erroneous." *Commonwealth v. Cook supra* 597 Pa. at 587, 952 A.2d at 603 *quoting Miller–El v. Cockrell supra* 537 U.S. at 340, 123 S.Ct. at 1041 *quoting Hernandez v. New York supra* 500 U.S. at 364, 111 S.Ct. at 1866; *Commonwealth v. Smith supra* 866 A.2d at 1140 *citing Commonwealth v. Doyen supra* 848 A.2d at 1013. The prosecutor's specific explanations were given moments after the challenged peremptory strikes were exercised, and the court, who directly observed the demeanor of the assistant district attorney throughout the entire jury selection process, made an express determination that the justifications for the peremptory strikes were both credible and race-neutral. Each of the explanations offered about these panelists (Nos. 10 and 16) referred to articulated considerations that related directly to these prospective jurors' ability to fairly and impartially serve in a drug trial, both individuals have family members suffering from illicit substance addictions, as well as one (1) relative having been charged and convicted of controlled substance offenses. *See Commonwealth v. Cook supra* 597 Pa. at 592, 952 A.2d at 606 and *Commonwealth v. Smith supra* 866 A.2d at 1140. Further, defense counsel failed to identify any statements and/or other acts or omissions by the prosecutor indicating a racial bias. *Commonwealth v. Cook supra* 597 Pa. at 594-595, 952 A.2d at 607. *See also* N.T. 9/13/16, p. 107.

13

Under the burden shifting framework of *Batson*, the Defendant was required to establish a *prima facie* case of purposeful discrimination in challenging the certain peremptory strikes made by the Commonwealth before the prosecution was required to provide race-neutral reasons for those challenges. *Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602 *quoting Commonwealth v. Harris supra* 572 Pa. at 506-07, 817 A.2d at 1042-43 *citing Batson v. Kentucky supra* 476 U.S. at 93-97, 106 S.Ct. at 1712-23; *Commonwealth v. Watkins supra* 630 Pa. at 680, 108 A.3d at 708 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602; and *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602-03. After such a *prima facie* showing, once the prosecution advanced such reasons, the burden returned to Defendant Phillips to reasonably dispute the persuasiveness of those explanations. *Id.* 597 Pa. at 586, 952 A.2d at 602 *quoting Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43 *citing Purkett v. Elem supra* 514 U.S. at 768, 115 S.Ct. at 1771; *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602-03 *citing Commonwealth v. Harris supra* 572 Pa. at 507, 817 A.2d at 1042-43; and *Commonwealth v. Watkins supra* 630 Pa. at 680, 108 A.3d at 708 *citing Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602.

The court in the matter at bar made a preliminary finding as to potential jurors 10 and 16 that Defendant had established a *prima facie* case of purposeful discrimination. N.T. 9/13/16, p. 103. This court then listened attentively to the explanations by Commonwealth's attorney that the prosecutor proffered to rebut Defendant Phillips' *prima facie* case related to these panelists (Nos. 10 and 16). N.T. 9/13/16, p. 104. For striking the panelists, the assistant district attorney was able to provide various, specific and race neutral explanations. The Commonwealth's

14

attorney stated, *inter alia,* that due to the adverse impacts of controlled substances on immediate family members, including homelessness, as well as criminal conviction(s), and the present trial involving allegations about the illicit substance, cocaine, these potential jurors (Nos. 10 and 16) could be resultantly biased unfairly prejudicing the prosecution or the defense. N.T. 9/13/16, p. 104.

The court determined these explanations offered by the prosecutor to be credible and race-neutral reasons for the exercise of the challenged peremptory strikes. N.T. 9/13/16, p. 108. Accordingly, the court concluded the Defendant failed to carry his burden of showing that the assistant district attorney exercised his peremptory challenges in a racially, discriminatory manner. N.T. 9/13/16, p. 108.

Unquestionably, Defendant Phillips is African-American. It is equally uncontroverted the Commonwealth did exercise peremptory challenges to strike panelists No. 10 and No. 16, both African-Americans. As offered by defense counsel, there were five (5) "dark-skinned, African-American perhaps" panelists among the venire, two (2) of which were not reached and unavailable thus to be seated, while another for hardship was excused. N.T. 9/13/16, p. 103. Yet, throughout the entirety of the juror selection process the record is devoid of any questions or statements made by the assistant district attorney and/or any other material evidence, even suggesting, let alone showing an invidious discriminatory motive related to the Commonwealth's seating of the jury, nor did this court note anything about the prosecutor's demeanor consistent with an inappropriate intent material to jury selection. In addition, unlike most other crimes, this matter did not involve a specific, individual victim of a differing ethnicity from the Defendant as he was tried with several Controlled Substance, Drug, Device and Cosmetic Act[27] violations.

---

[27] *See* 35 Pa.C.S. §§780-101 *et seq.*

15

In light of the foregoing, Defendant Phillips failed to carry his burden of proving that the Commonwealth engaged in purposeful racial discrimination when seating the jurors, the court having found the facially-neutral explanations by the Commonwealth to be credibly persuasive pursuant to *Batson* and its progeny. Defendant Phillips' claim that the court erred in failing to sustain defense counsel's *Batson* grounded objection is meritless. *See Commonwealth v. Cook supra* 597 Pa. at 586, 952 A.2d at 602 *quoting Commonwealth v. Harris supra* 572 Pa. at 506-07, 817 A.2d at 1042-43 *citing Batson v. Kentucky supra* 476 U.S. at 93-97, 106 S.Ct. at 1712-23; and *Commonwealth v. Williams supra* 602 Pa. at 393, 980 A.2d at 530. *See also Commonwealth v. Cook supra* 597 Pa. at 587, 952 A.2d at 603 *quoting Miller–El v. Cockrell supra* 537 U.S. at 340, 123 S.Ct. at 1041 *quoting Hernandez v. New York supra* 500 U.S. at 364, 111 S.Ct. at 1866; and *Commonwealth v. Smith supra* 866 A.2d at 1140 *citing Commonwealth v. Doyen supra* 848 A.2d at 1013.

## II. The evidence is insufficient to sustain the convictions for possession of a controlled substance with intent to deliver, possession of a controlled substance, and possession of drug paraphernalia since the Commonwealth failed to prove, beyond a reasonable doubt, that Mr. Phillips actually or constructively possessed the alleged cocaine and paraphernalia at issue.

Defendant Phillips via this second error assignment maintains that the trial evidence was insufficient as a matter of law to sustain his convictions for possession of a controlled substance with intent to deliver,[28] possession of a controlled substance,[29] and possession of drug paraphernalia.[30] More specifically, the Defendant argues the prosecution did not establish he "actually or constructively possessed the alleged cocaine and paraphernalia at issue."[31] *See*

---

[28] 35 Pa.C.S. §780-113(a)(30).
[29] 35 Pa.C.S. §780-113(a)(16).
[30] 35 Pa.C.S. §780-113(a)(32).

[31] The Defendant in setting forth his possession of a controlled substance, possession with intent to distribute a controlled substance, and possession of drug paraphernalia sufficiency appellate complaints does not contend the trial evidence failed to establish any of the other elements requisite to establishing as a matter of law these crimes. *See* Statement of Matters Complained No. 2.

16

Statement of Matters Complained, No. 2. Despite his averments and contentions to the contrary, a review of the trial record under the well-settled standard governing such a claim readily reveals Defendant Phillips' challenged convictions to rest on legally sufficient evidence. This appellate complaint is meritless.

In evaluating any type of sufficiency claim, the court must accept the evidence in the light most favorable to the Commonwealth and also drawing all rational evidentiary inferences such supports determine whether a reasonable jury could have found that each element of the crime(s) charged was established beyond a reasonable doubt. *Commonwealth v. Patterson*, 940 A.2d 493, 500 (Pa.Super. 2007) and *Commonwealth v. Rosario*, 438 Pa.Super. 241, 260-61, 652 A.2d 354, 364 (1994) *citing Commonwealth v. Calderini*, 416 Pa.Super. 258, 260-61, 611 A.2d 206, 207 (1992) *citing Commonwealth v. Jackson*, 506 Pa. 469, 472-73, 485 A.2d 1102, 1103 (1984). A court deciding a sufficiency challenge " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr*, 38 A.3d 868, 872 (Pa.Super. 2011) *citing Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011) *quoting Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) *quoting Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003) *quoting Commonwealth v. Gooding*, 818 A.2d 546, 549 (Pa.Super. 2003), *appeal denied*, 575 Pa. 691, 835 A.2d 709 (2003).

The evidence at trial need not " ... preclude every possibility of innocence, and the fact finder is free to resolve any doubts regarding a defendant's guilt." *Commonwealth v. Hansley*

Accordingly, these otherwise necessary elements of these crimes will not in this opinion be discussed. *See Commonwealth v. Veon*, 109 A.3d 754, 775 (Pa.Super. 2015), *reversed on other grounds*, 150 A.3d 435 (Pa. 2016)("In order to preserve a challenge to the sufficiency of the evidence on appeal, *the appellant's Rule 1925(b) statement must state with specificity the element or elements of the crime upon which the appellant alleges the evidence was insufficient. Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013); *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009). 'Such specificity is of particular importance in cases, where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.' "). (Emphasis added.) *See also Commonwealth v. McCree*, 857 A.2d 188, 192 (Pa.Super. 2004) *citing Commonwealth v. Lemon*, 804 A.2d 34, 37 (Pa.Super. 2002); *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super. 2002); and Pa. SSJI (Crim) 16.01 and 16.13(a)(32).

17

*supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000 *quoting Commonwealth v. Gooding supra* 818 A.2d at 549. Although a conviction must be based on " ... more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Davis*, 861 A.2d 310, 323 (Pa.Super. 2004) *citing Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super. 1997). " ... [I]f the record contains support for the convictions, they may not be disturbed." *Id.* 861 A.2d at 323-24 *citing Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) *citing Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

These long established principles of law governing a sufficiency challenge are equally applicable to cases where the evidence is circumstantial rather than direct, provided that the combination of inferential evidence links the accused to the criminality and/or establishes the crime's requisite element(s) beyond a reasonable doubt. *Commonwealth v. Kriegler*, 127 A.3d 840, 847 (Pa.Super. 2015) *quoting Commonwealth v. Hartie*, 894 A.2d 800, 803-04 (Pa.Super. 2006) *quoting Commonwealth v. Thomas*, 867 A.2d 594, 597 (Pa.Super. 2005). *See also Commonwealth v. Cox*, 546 Pa. 515, 528, 686 A.2d 1279, 1285 (1996).

In deciding whether as a matter of law the trial evidence was sufficient to sustain a conviction, it must be remembered "[w]hen evaluating the credibility and weight of the evidence, the fact finder is free to believe all, part or none of the evidence." *Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler*, 903 A.2d 1273, 1276-77 (Pa.Super. 2006). *See also Commonwealth v. Hansley supra* 24 A.3d at 416. Furthermore, the fact-finder is tasked with being the " ... sole judge[ ] of the credibility and weight of all testimony," and is certainly free to reject or accept, in whole or part, the testimony of any witness. Pa. SSJI (Crim)

18

2.04. Regarding the offered testimony and other trial evidence, the finder of fact in making a decision may choose what they value and discount what they find unpersuasive.

"In narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa.Super. 2014) *quoting Commonwealth v. Thompson*, 286 Pa.Super. 31, 428 A.2d 223, 224 (1981).

"Where the contraband a person is charged with possessing is not found on the person of the defendant, the Commonwealth is required to prove constructive possession." *Commonwealth v. Walker*, 874 A.2d 667, 677 (Pa.Super. 2005) *citing Commonwealth v. Kirkland*, 831 A.2d 607, 611 (Pa.Super. 2003), *appeal denied*, 577 Pa. 712, 847 A.2d 1280 (2004). *See also Commonwealth v. Vargas supra* 108 A.3d at 868 *citing Commonwealth v. Macolino*, 503 Pa. 201, 469 A.2d 132, 134 (1983); *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012), *appeal denied*, 619 Pa. 697, 63 A.3d 1243 (2013) *citing Commonwealth v. Kirkland supra* 831 A.2d at 611; *Commonwealth v. Jones*, 874 A.2d 108, 121 (Pa.Super. 2005) *quoting Commonwealth v. Haskins*, 450 Pa.Super. 540, 677 A.2d 328, 330 (1996), *appeal denied*, 547 Pa. 751, 692 A.2d 563 (1997).

The Superior Court has past further elaborated on such constructive possession:

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as 'conscious dominion.' (citation omitted). We subsequently defined 'conscious dominion' as 'the power to control the contraband and the intent to exercise that control.' (citation omitted). To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa.Super. 2011) *quoting Commonwealth v. Parker*, 847 A.2d 745, 750 (Pa.Super. 2004) *quoting Commonwealth v. Thompson*, 779 A.2d 1195, 1199

19

(Pa.Super. 2001), *appeal denied*, 567 Pa. 760, 790 A.2d 1016 (2001). *See also Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa.Super. 2013) *quoting Commonwealth v. Brown supra* 48 A.3d at 430; *Commonwealth v. Vargas supra* 108 A.3d at 868 *quoting Commonwealth v. Macolino supra* 503 Pa. at 206, 469 A.2d at 134, and *Commonwealth v. Johnson*, 611 Pa. 381, 407, 26 A.3d 1078, 1093 (2011); *Commonwealth v. Hutchinson*, 947 A.2d 800, 806 (Pa.Super. 2008) *citing Commonwealth v. Dargan*, 897 A.2d 496, 503, 504 (Pa.Super. 2006), *appeal denied*, 591 Pa. 671, 916 A.2d 1101 (2007); *Commonwealth v. Bricker*, 882 A.2d 1008, 1014 (Pa.Super. 2005) *citing Commonwealth v. Petteway*, 847 A.2d 713, 716 (Pa.Super. 2004) and *Commonwealth v. Parker supra* 847 A.2d at 750; *Commonwealth v. Brown supra* 48 A.3d at 430 *quoting Commonwealth v. Parker supra* 847 A.2d at 750; and *Commonwealth v. Jones supra* 874 A.2d at 121 *quoting Commonwealth v. Kirkland supra* 831 A.2d at 610 *citing Commonwealth v. Macolino supra* 503 Pa. at 206, 469 A.2d at 134.

Salient to current considerations, the facts summarized *infra* were credibly established at Defendant Phillips' trial. N.T. 9/14/16.

Detective Steven Bannar, Delaware County Criminal Investigation Division, and other police officials in March 2016 were conducting an ongoing investigation regarding illicit drug sales about the residence located at 2507 Bethel Road, Chester City. N.T. 9/14/16, pp. 24-25. The detective advised that the focus of their enforcement efforts was an individual named Tiesha Spriggs, who investigators believed was selling from that home (2507 Bethel Road) methamphetamine. N.T. 9/14/16, p. 25. During the course of this investigation, Detective Bannar sought and obtained a warrant for 2507 Bethel Road which authorized a controlled substance and related evidence search. N.T. 9/14/16, pp. 27-28. *See* Commonwealth Exhibit C-1 – Search Warrant Control No. 20160310M7102.

On April 5, 2016, at 6:00 A.M., Detective Bannar and other law enforcement personnel dressed in plainclothes and wearing bulletproof vests displaying in large letters, "POLICE," executed the magisterial district judge approved search warrant. N.T. 9/14/16, pp. 28-30, 73. Literally within seconds after entering the residence, 2507 Bethel Road, several officers proceeded to a rear bedroom on the first floor where in an open closet they found Defendant Phillips hiding among articles of clothing. N.T. 9/14/16, pp. 31-33, 70. Detective Banner, at

20

trial, absent any qualifications, identified Defendant Phillips as the individual the police found in the closet concealed about clothing items. N.T. 9/14/16, pp. 31-32, 33-34.

The officers removed the Defendant from the closet and detained him. N.T. 9/14/16, p. 32. Defendant Phillips then questioned the officers "what was going on," to which Detective Bannar " ... explained that I had numerous buys of methamphetamines out of this house." N.T. 9/14/16, pp. 32, 72-73. The detective described Defendant Phillips' immediate reply as "[h]e alluded to the fact that he only had cocaine on him, a small amount, ... ." N.T. 9/14/16, p. 32. More specifically, Detective Bannar testified the Defendant stated, "I've got a little bit of cocaine." N.T. 9/14/16, pp. 33, 73-74.

While further searching this rear bedroom, the officers discovered a jacket among the men's clothing in the closet where the Defendant had just moments before been found hiding. N.T. 9/14/16, pp. 36, 37, 69, 71, 74, 100. Additional examination of this coat produced a clear sandwich bag. N.T. 9/14/16, p. 36. The contents of this bag included seven (7) clear bags and nine (9) blue bags, each containing what Detective Bannar described as cocaine. N.T. 9/14/16, pp. 36, 100. At trial, Detective Banner identified the larger bag and the sixteen (16) small bags. N.T. 9/14/16, pp. 37-38. *See also* Commonwealth Exhibit C-4 – Large bag containing smaller bags of cocaine.

Officer James Nolan, Chester City Police Department, was the first law enforcement official during the execution of the search warrant to enter the residence (2507 Bethel Road). N.T. 9/14/16, pp. 123, 127. Officer Nolan during trial detailed that the officers continuously announced their presence and that they were police authorities as they proceeded into as well as throughout the house. N.T. 9/14/16, p. 128.

21

At first glance, Office Nolan did not encounter any individuals in the rear bedroom; however, on more closely examining the closet, he observed Defendant Phillips standing against the wall and leaning his head out of the same. N.T. 9/14/16, pp. 124, 127-28. The Defendant was then taken into custody. N.T. 9/14/16, pp. 128, 129. Officer Nolan testified that the aggregate time from when he first saw the Defendant to his being detained was a matter of mere seconds. N.T. 9/14/16, pp. 129-30.

Officer Nolan recounted Defendant Phillips inquiring as to the officers' purpose on the morning of the arrest. N.T. 9/14/16, pp. 124, 130. In reply to the Defendant's question, the officer recalled Detective Bannar responding police were searching for methamphetamines, prompting Defendant Phillips to voice that he was in possession of cocaine. N.T. 9/14/16, pp. 124, 130-31. Throughout the course of these exchanges, Detective Bannar and Officer Nolan were standing next to each other. N.T. 9/14/16, pp. 131-32.

Following the law enforcement officials' recovery of the sixteen (16) baggies, the contents were field tested and yielded positive reactions for the Schedule II controlled substance, cocaine. N.T. 9/14/16, pp. 43-44. These bags were subsequently sent for laboratory testing to the Pennsylvania State Police.[32] N.T. 9/14/16, pp. 43-44. The resulting Pennsylvania State Police Laboratory Report revealed the seven (7) clear bags tested positive for the Schedule II controlled substance cocaine and the total weight of the contents of the seven (7) bags was six grams and seven hundredths (6.07) of a gram. N.T. 9/14/16, pp. 44-45. *See also* Commonwealth Exhibit C-8 – Pennsylvania State Police Laboratory Report – L-16-01905-1. The nine (9) blue bags also tested positive for cocaine and weighed a total of one (1) gram and eighty-two (82) hundredths of a gram. N.T. 9/14/16, pp. 44-45. *See also* Commonwealth

---

[32] A proper custodial chain regarding these recovered bags of cocaine was established via counsel's stipulation. *See* Commonwealth Exhibit C-10 – Stipulation. N.T. 9/14/16, pp. 47-48.

Exhibit C-8 – Pennsylvania State Police Laboratory Report – L-16-01905-1. The aggregate weight of the sixteen (16) bags was seven grams and eighty-nine hundredths (7.89) of a gram. N.T. 9/14/16, p. 46. *See also* Commonwealth Exhibit C-8 – Pennsylvania State Police Laboratory Report – L-16-01905-1.

Defendant Phillips per this assignment of error advances on appeal that the case record was insufficient as a matter of law to establish he possessed any items of contraband and his convictions[33] must thus be set aside. *See* Statement of Matters Complained, No. 2.

Based on the above-recounted salient facts credibly established at trial, as well as accepting the evidence in the light most beneficial to the prosecution and the reasoned inferences flowing from such, Defendant Phillips' sufficiency challenge is meritless. *Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

On a review of the totality of the circumstances seen most favorable to the Commonwealth, it is without question that the Defendant had " … the power to control the [controlled substance and paraphernalia] and the intent to exercise that control." *Commonwealth v. Cruz supra* 21 A.3d at 1253 *quoting Commonwealth v. Parker supra* 847 A.2d at 750 *quoting Commonwealth v. Thompson supra* 779 A.2d at 1199. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Rosario supra* 438 Pa.Super. at 260-61, 652 A.2d at 364 *citing Commonwealth v. Calderini supra* 416 Pa.Super. at 260-61, 611 A.2d at 207 *citing Commonwealth v. Jackson supra* 506 Pa. at 472-73, 485 A.2d at 1103.

At the time the search warrant was executed Defendant Phillips was the only individual in the rear bedroom and also hidden within the very closet where the controlled substances and

---

[33] 35 Pa.C.S. §780-113(a)(30); 35 Pa.C.S. §780-113(a)(16); and 35 Pa.C.S. §780-113(a)(32).

paraphernalia (baggies) were recovered. N.T. 9/14/16, pp. 31-33, 34, 70, 124, 127-28, 129-30. *See also* Commonwealth Exhibit C-4 – Large bag containing smaller bags of cocaine. On being discovered by the police and advised that they were looking for methamphetamine, the Defendant volunteered that he was in possession of " ... a little bit of cocaine." N.T. 9/14/16, pp. 32, 72-73, 74, 124, 130-32. The police officers found in this same closet only a few moments later a jacket which contained in a pocket a large, clear bag which held sixteen (16) smaller bags that contained the Schedule II controlled substance, cocaine, the same illicit drug Defendant Phillips just told investigators he possessed. N.T. 9/14/16, pp. 36, 37-38, 43-46, 74, 100.

It is not necessary for the various bags of cocaine to have been on the Defendant's person at the time the police detained him to legally prove he possessed the controlled substance and paraphernalia (baggies). *Commonwealth v. Walker supra* 874 A.2d at 677 *citing Commonwealth v. Kirkland supra* 831 A.2d at 611. *See also Commonwealth v. Vargas supra* 108 A.3d at 868 *citing Commonwealth v. Macolino supra*; *Commonwealth v. Brown supra* 48 A.3d at 430 *citing Commonwealth v. Kirkland supra* 831 A.2d at 611; *Commonwealth v. Jones supra* 874 A.2d at 121 *quoting Commonwealth v. Haskins supra* 450 Pa.Super. at 677 A.2d at 330. Rather, the totality of the evidence must demonstrate that Defendant Phillips had " 'the power to control the [cocaine and paraphernalia] and the intent to exercise that control.' " *Commonwealth v. Cruz supra* 21 A.3d at 1253 *quoting Commonwealth v. Parker supra* 847 A.2d at 750 *quoting Commonwealth v. Thompson supra* 779 A.2d at 1199. *See also Commonwealth v. Hopkins supra* 67 A.3d at 820 *quoting Commonwealth v. Brown supra* 48 A.3d at 430; *Commonwealth v. Vargas supra* 108 A.3d at 868 *quoting Commonwealth v. Macolino supra* 503 Pa. at 206, 469 A.2d at 134, and *Commonwealth v. Johnson supra* 611 Pa. at 407, 26 A.3d at 1093;

24

*Commonwealth v. Hutchinson supra* 947 A.2d at 806 *citing Commonwealth v. Dargan supra* 897 A.2d at 503, 504; *Commonwealth v. Bricker supra* 882 A.2d at 1014 *citing Commonwealth v. Petteway supra* 847 A.2d at 716 and *Commonwealth v. Parker supra* 847 A.2d at 750; *Commonwealth v. Brown supra* 48 A.3d at 430 *quoting Commonwealth v. Parker supra* 847 A.2d at 750; and *Commonwealth v. Jones supra* 874 A.2d at 121 *quoting Commonwealth v. Kirkland supra* 831 A.2d at 610 *citing Commonwealth v. Macolino supra* 503 Pa. at 206, 469 A.2d at 134. The trial evidence must also show in its totality the Defendant was " ... aware of the presence and nature of the substance." Pa. SSJI (Crim) 16.02(b)A. As the cocaine and paraphernalia (baggies) were found in a coat in the closet where Defendant Phillips was only seconds before hiding prior to being removed by the police, and he as well verbally acknowledged to the officers that he was then in possession of cocaine, it was proven as a matter of law that Defendant Phillips constructively possessed the controlled substance cocaine and paraphernalia (baggies). *Commonwealth v. Cruz supra* 21 A.3d at 1253 *quoting Commonwealth v. Parker supra* 847 A.2d at 750 *quoting Commonwealth v. Thompson supra* 779 A.2d at 1199.

Based on the foregoing trial evidence, when viewed in the light most favorable to the Commonwealth, together with the rational inferences such reasonably allows, Defendant Phillips' possession of a controlled substance with intent to deliver,[34] possession of a controlled substance,[35] and possession of drug paraphernalia[36] convictions are each legally sound. *See generally Commonwealth v. Patterson supra* 940 A.2d at 500 and *Commonwealth v. Kriegler supra* 127 A.3d at 847 *quoting Commonwealth v. Hartle supra* 894 A.2d at 903-04 *quoting Commonwealth v. Thomas supra* 867 A.2d at 597.

---

[34] 35 Pa.C.S. §780-113(a)(30).
[35] 35 Pa.C.S. §780-113(a)(16).
[36] 35 Pa.C.S. §780-113(a)(32).

The jury as the " ... sole judge[] of the credibility and weight of all testimony" was "free to believe all, part or none of the evidence." Pa. SSJI (Crim) 2.04. *See also Commonwealth v. Patterson supra* 940 A.2d at 500 *quoting Commonwealth v. Emler supra* 903 A.2d at 1276-77.

In reviewing Defendant Phillips' sufficiency challenges to his convictions, the court " ... may not weigh the evidence and substitute [the court's] judgment for the fact-finder." *Commonwealth v. Orr supra* 38 A.3d at 872 *citing Commonwealth v. Hansley supra* 24 A.3d at 416 *quoting Commonwealth v. Jones supra* 874 A.2d at 120-21 *quoting Commonwealth v. Bullick supra* 830 A.2d at 1000. If the court finds " ... the record contains support for the convictions," the decision must remain as the jury concluded. *Commonwealth v. Davis supra* 861 A.2d at 323-24 *citing Commonwealth v. Marks supra* 704 A.2d at 1098 *citing Commonwealth v. Mudrick supra* 510 Pa. at 308, 507 A.2d at 1213.

### III. Conclusion

For all the above reasons, Defendant Phillips' convictions and judgment of sentence should be affirmed.

BY THE COURT:



Kevin F. Kelly                      J.

26